**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
RENO, NEVADA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 3:05-CR-00085-ECR-RAM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| JAMES WILLIAM LONDO, | ) | |
| Defendant. | ) | |

Defendant has moved (#293) pursuant to Fed. R. Crim. P. 29(c) for a new trial or judgment of acquittal. Defendant also filed Notice of Supplemental Authority (#295), Defendant's Supplement to Notice of Supplemental Authorities (#301), and a Response (#307) to the Government's Supplemental Memorandum.

The Government has also responded as required by the orders of the Court.

The Government's evidence at trial was clearly sufficient, when viewed in a light most favorable to the Government, so that a rational trier of fact could have found Defendant guilty on both Counts of the Indictment. As outlined in the Government's brief (#300), the Government's evidence, if believed, was sufficient to enable any rational trier of fact to find each of the essential elements of each of the Counts of the Indictment beyond a reasonable doubt. The issue of credibility was for the jury. The Government's evidence was sufficient to show beyond a reasonable doubt that the Government did not induce the Defendant into committing a crime involving a greater quantity of methamphetamine

than he was predisposed to commit and that the Defendant was predisposed to commit the charged crimes with the charged quantities independent of and before coming in contact with the Government agents.

The interests of justice do not require the granting of a new trial.

The jury verdicts were not inconsistent as to the amount of methamphetamine involved. The verdicts in the two Counts call for separate findings by the jury, in the one Count actual methamphetamine weighing 50 grams or more and in the other Count a mixture and/or substance with a detectible amount of methamphetamine weighing 50 grams or more. The same batch could, and in this case did, contain both 50 grams or more of actual methamphetamine and a mixture containing a detectible amount of methamphetamine weighing 50 grams or more.

During the trial, the Defendant sought to introduce certain personnel records of the witness Chris Pitzer through Maxine Cortes and Matthew Fisk, the present and former administrators of the Carson City Judicial Court. Mr. Pitzer was previously employed by that court. According to the argument presented to the Court at trial, the purpose of the documents was to impeach Mr. Pitzer and to show his motives by evidence of bias and prejudice in favor of the Government, in some sense his need to redeem himself by his conduct related to Defendant.

The documents consisted of:

(a) Mr. Pitzer's medical leave records;

(b) Mr. Pitzer's letter of resignation;

(c) A deal brokered for Mr. Pitzer to resign rather than to be fired.

The deal permitting Mr. Pitzer to resign related to an Internal Affairs investigation which showed that Mr. Pitzer had been misusing government property, approximately $10,000 worth of ammunition, in an attempt to secure a job with a special operation out of New York. Several officers had gotten caught up in the situation. They identified firearms transactions to try to get a job. Their activities put the Carson City Justice Court at risk and they were found to be in violation of city regulations and state law.

At trial, the Court rejected the documents finding that the documents would not show bias or prejudice toward the Government; that the evidence was just too remote, too indirect to indicate bias or prejudice toward the Government, a need somehow for Mr. Pitzer to want to redeem himself by misconduct relating to Defendant. The Court found there was an insufficient nexus between the documents and bias and prejudice of the witness toward the Government to permit use of the documents for that purpose. The Court also found the documents were much more prejudicial than probative under Fed. R. Ev. 403. The Court did not reject the documents for violation of Fed. R. Ev. 608(b).

The developing jurisprudence under Fed. R. Ev. 608(b) and some related rules appear to cast doubt on the survival of the longstanding common law rule which prohibits impeachment of a witness on a collateral matter. Thus under *Slovik v. Yates*, ___F.3d___, No. 06-55867, 2008 WL 4459083 (9th Cir. Oct. 6, 2008), the trial court should have allowed the use of extrinsic documents

to cross examine a witness to show he was on probation when he had testified that he was not on probation.

Whether Mr. Slovik was on probation was a collateral matter. Counsel did not seek to bring in the documents showing he was on probation to impeach his credibility because he was on probation (which would not of itself be a basis for impeachment), but to show he had lied under oath on direct examination and therefore was less worthy of belief. This evidence would directly contradict his testimony.

The *Slovik* case did not consider the issue of impeachment on a collateral matter but only the question of evidence as to whether the witness had lied under oath and impeachment on that basis.

Other cases developing under Rule 608(b) have analyzed this problem.

In *U.S. v. Castillo*, 181 F.3d 1129 (9th Cir. 1999), the court considered impeachment by contradiction. Extrinsic evidence was proper to show specific testimony was false because it contradicted a broad disclaimer of misconduct. Such a disclaimer the Court found could open the door to such extrinsic evidence even though the contradicting evidence was otherwise inadmissible under Fed. R. Ev. 404 and 608(b). In *Castillo*, a broad disclaimer of misconduct was not merely collateral but also important to the witness credibility.

In *U.S. v. Hinkson*, 526 F.3d 1262 (9th Cir. 2008), the Court indicates that extrinsic evidence that the principal Government witness had not received the purple heart would be admissible to contradict his implied statement that he had received this decoration because he wore a purple heart pin in his lapel while on

4

the witness stand. This was treated as non-verbal conduct intended as an assertion of fact. In *Hinkson*, the fact that the witness had received the purple heart was not merely a collateral matter but important to the substance of the testimony he offered at the trial.

In the case at bar, the extrinsic documents sought to be used (as analyzed elsewhere in this order) were presented to impeach the witness Mr. Pitzer for bias and prejudice toward the Government. There was no nexus between the evidence and proof of bias or prejudice toward the Government. The documents were offered to impeach the witness on a collateral matter.

The issue of extrinsic evidence of pure contradiction of a witness testimony on a collateral matter or of impeachment by showing a witness lied under oath as to a collateral matter has not been explored significantly in the cases.

The court in *Slovik* (which is a habeas corpus case addressing a state conviction) did not address the issue of impeachment on a collateral matter. It considered the issue of direct contradiction of the witness testimony and impeachment on the basis that he had lied under oath under the confrontation clause of the United States Constitution. The Court held that there was a Sixth Amendment right to contradict a witness' testimony to show a prototypical form of bias. It does not appear that the rule prohibiting impeachment on a collateral matter is repealed in *Slovik*. Had the issue been considered in *Slovik* on the basis of impeachment on collateral matter it may have been decided differently.

The testimony of Mr. Pitzer did not contain any broad disclaimers of misconduct in the evidence or testimony. Mr. Pitzer

was called as a defense witness and no inquiry of that broad a nature was made or responded to.

The relevant testimony of Mr. Pitzer included:

(1) That his decision to leave the Carson City Alternative Sentencing Department was voluntary.

(2) That in at least one instance, when he was directed by the Carson City Judicial Department to arrest a drug trafficker, he did not do so.

The Carson City Judicial Department personnel documents sought to be used through Maxine Cortes and Matthew Fisk were contradictory to the testimony of Mr. Pitzer's as set forth above.

The testimony of Mr. Pitzer on each instance was as to a collateral matter. The decision to leave the Alternative Sentencing Department of the Carson City Judicial Department while under threat of termination did not show bias or prejudice for the Government as argued by defense counsel. The refusal to arrest a drug trafficker on a different independent occasion did not show that Mr. Pitzer was biased or prejudiced toward the Government and did not relate to any matter material to the issues in the case or show that Mr. Pitzer was untruthful in his testimony.

The proposed evidence in the case at bar raised problems of unfair prejudice against the Government and had little probative value as to the credibility of Mr. Pitzer. We so found in rejecting the documents during the trial. Fed. R. Ev. 403 provided that basis to reject the use of the documents.

Fed. R. Ev. 611 is also a factor in the mix. The introduction of these documents raised a problem of an independent separate significant issue relating to the personnel problems of Mr. Pitzer.

This would conceivably have focused the jury on Mr. Pitzer rather than on the Defendant's conduct and required evidence from both sides as to whether Mr. Pitzer had really done the things of which he was accused.

We do not conclude that the law has rejected the collateral impeachment rule. The *Slovik* case is somewhat difficult to distinguish. However, *Slovik* is not decided with reference to Rule 608(b), but rather under the confrontation clause of the Constitution. The *Slovik* case largely addresses the improper limitation on cross examination as per *Davis v. Alaska*, 415 U.S. 408, 315-16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) and Fed. R. Ev. 611.

We also consider in light of the evidence presented at trial whether, if the rejection of the use of these documents was error, then whether the error was harmless.

In light of the very substantial evidence in the case against Defendant, had this evidence been received would a reasonable jury have still found the Defendant guilty. We ask in the language of *Slovik* would the jury have viewed Mr. Pitzer's testimony in a different light so that they would not have found a guilty verdict.

Mr. Pitzer's testimony offered at trial did not prove to be of great significance. He offered little to support the defense case. Simply having impeached him was not an important aspect of the case.

Unlike the witness in *Slovik*, Mr. Pitzer (although he might have been considered an important witness for the defense) was not the only witness for the defense with respect to his activities and credibility and unlike *Slovik*, Mr. Pitzer was not the only witness

for the Government, in fact he was not a witness for the Government at all.

Other evidence relating to Mr. Pitzer's credibility was presented by the defense through Kimberly Blackwood and Mr. Fisk. Impeaching Mr. Pitzer with the use of the subject documents would not have shown a motive to favor the Government.

As the late Judge Joseph Sneed was heard to say, we are looking for fair trials and do not insist on perfect trials.

**IT IS, THEREFORE, HEREBY ORDERED** that Defendant's Motion (#293) for a new trial or for judgment of acquittal pursuant to Fed. R. Crim. P. 29(c) is **DENIED**.

Dated this  1st  day of December, 2008.

_____
UNITED STATES DISTRICT JUDGE